UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| G.J. H.L., (A#241-816-249),[1]<br>Petitioner,<br>v.<br>WARDEN, CALIFORNIA CITY DETENTION FACILITY, et al.,<br>Respondents. | No. 1:26-cv-06982-DC-SCR<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. This matter was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).

## I. Factual and Procedural History

Petitioner is a native and citizen of Venezuela who entered the United States without inspection on July 2, 2022. ECF No. 5-2 at 1 (I-213 Form). He was arrested by Customs and Border Patrol on the same day. ECF No. 5-2 at 3. He was placed in removal proceedings and

[1] The Court grants Petitioner's request to be identified by his initials due to his pending asylum application and has modified the case caption accordingly. See ECF No. 11 at 24. The Clerk of Court shall update the docket and all parties are instructed to identify Petitioner by his initials in all future pleadings. See Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

administratively charged with violating the Immigration and Nationality Act by being present without being admitted or paroled and being an immigrant without an immigrant visa. ECF No. 5-2 at 2. On July 3, 2022, Petitioner was released from immigration detention and placed in the Alternatives to Detention program. Id. He applied for asylum (I-589) and withholding of removal which was received by USCIS on or about April 13, 2023. ECF No. 11-3 at 2. Petitioner was granted employment authorization, which is valid until October 9, 2028. ECF No. 5-2 at 3.

On June 25, 2026, Petitioner stopped at an agricultural inspection station in Florida while driving a company vehicle. ECF No. 11 at 6. After the vehicle was searched, state authorities arrested Petitioner and charged him with drug possession without a prescription, a class 3 felony, for having a vaping device that contained drug residue on it. ECF No. 11 at 6. He was booked into the local jail and released from criminal custody on bond on June 28, 2026. Id. Upon release from criminal custody, Petitioner was immediately arrested by Immigration and Customs Enforcement pursuant to an administrative arrest warrant. ECF No. 5-3.

Petitioner requested a custody redetermination hearing before an IJ, which was ultimately held on July 16, 2026. ECF No. 5-1 (Notice of Custody Determination). In support of bond, Petitioner submitted proof of employment and tax returns, sponsorship and support letters from friends, family, and coworkers. ECF No. 9 at 9, 18, 20, 22, 24-34. The IJ denied Petitioner bond on the basis that he was a danger to the community. ECF No. 5-4 at 3. Petitioner appealed the IJ's bond denial to the Board of Immigration Appeals ("BIA") which remains pending. ECF No. 5-5.

On August 30, 2026, the criminal charge against Petitioner was dismissed. The Florida State Attorney declined to prosecute the case because "the likelihood of conviction is minimal." ECF No. 9 at 12.

On September 17, 2026, the undersigned sua sponte appointed Petitioner counsel and granted leave to file an amended § 2241 petition. ECF No. 7. In the same order, Respondents were ordered to file an audio transcript of the bond hearing no later than seven days after service of the amended habeas petition in the event that Petitioner raises a challenge to the IJ's bond

denial. Id.

Petitioner filed an amended § 2241 petition on October 6, 2026 raising three claims for relief. First, Petitioner raises a Fifth Amendment due process and statutory challenge based to the IJ's custody redetermination decision because it was not supported by sufficient evidence and was legally erroneous. ECF No. 11 at 18-21. Petitioner submits that the IJ erred in relying on Petitioner's criminal history alone to establish dangerousness. According to Petitioner, "'[t]he mere fact that a man has been arrested has very little, if any, probative value in showing that he has engaged in any misconduct," because "[a]n arrest shows nothing more than that someone probably suspected the person apprehended of an offense.'" ECF No. 11 at 17-18 (quoting Schware v. Bd. of Bar Exam'rs, 353 U.S. 232, 241 (1957)). Moreover, Petitioner points out that "[t]he BIA applies the same caution: it is 'hesitant to give substantial weight to an arrest report, absent a conviction or corroborating evidence of the allegations contained therein.'" ECF No 11 at 18 (quoting Matter of Arreguin, 21 I. & N. Dec. 38, 42 (BIA 1995)). Petitioner's only criminal arrest "arose form an empty vaping device holding only residue, and it involved no violence, no weapon, no victim, and no distribution." ECF No. 11 at 20. Since the date of the bond hearing, the Florida State Attorney declined to prosecute this charge. However, Petitioner argues that there is no procedural pathway to submit this new evidence to the immigration court. Petitioner contrasts the IJ's finding of dangerousness against his employment history and credentials from the Department of Defense that granted him "unescorted access to military installations." ECF No. 11 at 21. The IJ's bond denial order does not explain whether, or how, Petitioner's employment was considered as one of the required Guerra factors.

In claim two, Petitioner raises an as applied procedural due process challenge to the IJ's bond denial based on the misallocation of the burden of proof and the lack of interpretation during the hearing. ECF No. 11 at 22- Here, "[p]lacing the burden on Petitioner to disprove danger, on a record built from an untested police narrative about a single charge the State would later decline to prosecute, created a high risk of erroneous deprivation." Id. at 23 (citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976)). In these circumstances, due process required that the burden of proof be placed on the Government. Id.

Finally, in claim three, Petitioner contends that his continued detention after the criminal charge was dropped violates due process. ECF No. 11 at 23-24. "[T]he immigration court has declined to reconsider custody while the BIA appeal is pending … and the BIA does not engage in factfinding when it decides an appeal, 8 C.F.R. § 1003.1(d)(3)(iv)." Id. at 23. Therefore, no court has considered the dismissal of the one criminal charge against Petitioner that was used to deny him bond. By way of relief, Petitioner seeks immediate release or, in the alternative, a new bond hearing before an IJ at which the Government has the burden of demonstrating by clear and convincing evidence that Petitioner's detention is justified based on danger or flight risk. ECF No. 11 at 24.

Respondents submitted a supplemental reply to the amended § 2241, but did not lodge any audio transcript of the bond hearing as required by the court's September 22, 2026 order, nor did they request an extension of time to do so. ECF No. 12. According to Respondents, "the IJ properly cited the factors that guide adjudicators in bond hearings in the Ninth Circuit." ECF No. 12 at 2 (citing Matter of Guerra, 24 I&N Dec. 37, 40 (BIA 2006)). The IJ did not abuse his discretion because "the IJ's analysis rests on inferences supported by the record." Id. at 2. Respondents attached the IJ's order which is a check the box style of form that indicates that "[a]fter full consideration of the evidence presented, the [noncitizen's] request for a change in custody status is hereby ordered: denied, because [of a] danger to the community." ECF No. 12-1 at 3.

In his traverse, Petitioner points out that the single page IJ bond denial order "cites no authority, names no factor, identifies no evidence, and draws no inference" from any evidence that was before the immigration court. ECF No. 13 at 2. Since there is no record of how the IJ came to his bond decision, there is no indication that the correct legal standard was applied. ECF No. 13 at 2. According to Petitioner, "[t]he order's preprinted recital that it was entered "'[a]fter full consideration of the evidence presented,'" id. p. 3, is the kind of "catchall phrase" that a reviewing court does not credit when the agency "fail[s] to mention highly probative or potentially dispositive evidence.'" ECF No. 13 at 6 (citations omitted).

/////

**II. Legal Standards**

In constitutional challenges to an IJ's detention determination, a habeas court reviews mixed questions of fact and law under an "abuse of discretion" standard. Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024). "[A]buse of discretion" review does not involve "reweigh[ing] evidence" but rather determining whether the IJ "applied the correct legal standard." Id. (citation and quotations omitted). In other words, "[i]n reviewing the IJ's determination, a district court['s] . . . review is limited to whether the IJ's decision 'reflects clear legal error or is unsupported by sufficient evidence.'" Quan v. Barr, No. 20-cv-08118-LB, 2021 WL 308610 at *4 (N.D. Cal. 2021) (quoting Hilario Pankim v. Barr, No. 20-CV-02941-JSC, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020) (internal citation and quotation omitted)). The reviewing court must bear in mind that "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." Hernandez, 872 F.3d 976, 981 (9th Cir. 2017). Moreover, a habeas court reviews pure questions of law de novo. See Singh, 638 F.3d at 1202-03.

"To determine whether [a noncitizen] is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent." Martinez, 124 F.4th at 783 (citing Matter of Guerra, 24 I. & N. Dec. 37 (BIA 2006), abrogated on other grounds by Hernandez-Lara v. Lyons, 10 F.4th 19, 41 (1st Cir. 2021)). "The nine factors an IJ 'may' consider 'include any or all of the following:' (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen's] length of residence in the United States; (3) the [noncitizen's] family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen's] employment history; (5) the [noncitizen's] record of appearance in court; (6) the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen's] history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen's] manner of entry to the United States." Id.

An "IJ's failure to consider or apply any of the Guerra factors and decision to instead rely

on . . . evidence that 'bear little if any relevance' to Petitioner's risk of flight [or danger], while seemingly ignoring all evidence in Petitioner's favor constitutes a misapplication of the legal standard to the facts." Perez Velasquez v. Bondi, No. 26-CV-01759-GPC-DDL, 2026 WL 1042479, at *6 (S.D. Cal. Apr. 16, 2026). "'[T]he Guerra factor most pertinent to assessing dangerousness' is 'the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses.'" Martinez, 124 F.4th at 783 (quoting Singh, 638 F.3d at 1206).

## III. Analysis

### A. Administrative Exhaustion

"The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017) (citing Singh v. Holder, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011)). Courts may require exhaustion as a prudential matter when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (quoting Noriega-Lopez v. Ashcroft, 335 F.3d 874, 881 (9th Cir. 2003)). The exhaustion requirement may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004).

The undersigned recommends waiving the exhaustion requirement based on the facts of this case which Respondents do not dispute. Petitioner filed a reconsideration request of the IJ's bond decision based on the change of circumstances after his pending felony charge was dismissed. However, the IJ denied that on the basis of the pending BIA appeal. Petitioner further contends that the appeal of the IJ's bond decision will not consider this new evidence. Therefore, the undersigned concludes that Petitioner's administrative remedies are inadequate and irreparable injury will result while awaiting for the BIA to review the IJ's order which is now

based on stale evidence. See Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004).

**B. IJ Bond Denial**

On the record before the Court, the IJ abused discretion by finding Petitioner is too dangerous to release. The Court begins by noting the limited record concerning the IJ's decision and what that means for analysis of the legal adequacy of the bond hearing. When granting Petitioner leave to amend, the Court ordered that Respondents "shall file an audio transcript of the bond hearing no later than 7 days after service of the amended habeas petition[,]" ECF 7, if the amended petition challenges the adequacy of the bond hearing. The First Amended Petition raises that challenge. ECF 11 ¶¶ 69–90. Yet Respondents did not file the audio.

The Court is left to review a single page check-the-box form of the IJ's decision making process. See ECF Nos. 4, 7. On the basis of that decision, the IJ did not meaningfully consider or apply the Guerra factors. Petitioner submitted evidence of a stable residence in Florida for four years, family ties to the community, gainful and lawful employment, no history of fleeing prosecution, and no evidence of any ATD violations. None of that appears in the IJ decision. Nor does the IJ explain in the decision how Petitioner's arrest for possession of a vaping device with alleged drug residue would render him too dangerous to release under the relevant prong of the Guerra factors that that consider "the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." Martinez, 124 F.4th at 783. Therefore, the undersigned concludes that the IJ abused his discretion in failing to "correctly appl[y] the statutory standard to a given set of facts." Martinez, 124 F.4th at 783.

Even assuming that the IJ did consider the Guerra factors, and found that the vaping-drug residue arrest alone showed Petitioner to be too dangerous to release, that too would violate due process and constitute an abuse of discretion. "The mere fact that a man has been arrested has very little, if any, probative value in showing that he has engaged in any misconduct." Schware, 353 U.S. at 241. Indeed, the BIA recognizes the problem of relying on an arrest alone to conclude that a person is dangerous:

> Just as we will not go behind a record of conviction to determine the guilt or innocence of an alien, so we are hesitant to give substantial weight to an arrest report, absent a conviction or corroborating evidence of the allegations contained therein. Here, the

> applicant conceded that the arrest took place but admitted to no wrongdoing. Considering that prosecution was declined and that there is no corroboration, from the applicant or otherwise, we give the apprehension report little weight.

In re Arreguin, 21 I&N Dec. 38, 42 (BIA 1995); see also Ortega-Rangel v. Sessions, 313 F.Supp.3d 993, 1004-05 (finding violation of due process where "the IJ concluded Ms. Ortega is a danger to the community solely because she was arrested for possession for sale of a controlled substance"). To the extent that a mere arrest could justify a finding of dangerousness—for example, where there is probative and specific evidence of a risk of violence or harm to another person—Petitioner's arrest was for an offense that did not involve any victim or alleged harm.[2] Indeed, the Ninth Circuit has cautioned that even where there is a conviction, "not all criminal convictions conclusively establish that an alien presents a danger to the community, even where the crimes are serious enough to render the alien removable." Singh, 638 F.3d at 1206; see also Foucha v. Louisiana, 504 U.S. 71, 82-83 (1992) (requiring a showing of dangerousness beyond that "of any convicted criminal" to justify civil detention of the criminally insane). Petitioner was also released by the state criminal justice system after his arrest, further showing the arbitrary nature of a too-dangerous-to release finding based on that same arrest. The IJ bond denial violated Petitioner's due process rights.

**IV. Remedy**

The undersigned has considered Petitioner's request for release and his alternative request for a bond hearing in which the government bears the burden of establishing his risk of danger or flight by clear and convincing evidence. Respondent maintains that Petitioner has already received the only remedy to which he is entitled, i.e. a bond hearing pursuant to 8 U.S.C. § 1226(a).

In tailoring the remedy for this due process violation, the Court is mindful that federal courts have "a fair amount of flexibility" in fashioning specific habeas relief. Burnett v. Lampert, 432 F.3d 996, 999 (9th Cir. 2005). The undersigned finds support for both forms of relief in

[2] As other courts have recognized, an IJ may be "permitted to consider pending criminal charges, provided the evidence of the charges [is] 'probative and specific.'" Ortega-Rangel, 313 F. Supp. at 1004 (quoting Barrientos v. ICE Field Office Director, 667 Fed. Appx. 184, 184 (9th Cir. 2016)).

similar cases where an IJ failed to provide a constitutionally adequate hearing. See, e.g., Bhim Raj KC v. Chestnut, No. 1:26-CV-03159-TLN-SCR, 2026 WL 2099279, at *3 (E.D. Cal. July 21, 2026) (ordering release as opposed to another bond hearing); Kumar v. Warden, No. 1:26-CV-00035-KES-CDB, 2026 WL 2078191, at *6 (E.D. Cal. July 17, 2026) (collecting cases ordering release and new bond hearings).

In light of the subsequent dismissal of the only criminal charge against Petitioner, the undersigned finds that "[n]o purpose would be served by requiring petitioner to endure another bond hearing and additional time in custody." See Lara v. Hernandez, No. C26-0747 TSZ, 2026 WL 1758643, at *5 (W.D. Wash. June 18, 2026) (ordering release of petitioner with federal drug conviction who graduated from a substance abuse treatment program, maintained her sobriety, completed community service, and had supportive social networks). Accordingly, the appropriate remedy is release.

Accordingly, IT IS HEREBY ORDERED that the Clerk of Court shall update the docket to identify Petitioner by his initials only.

IT IS FURTHER RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus (ECF No. 1) be GRANTED as to claim one.

2. Respondents be ordered to immediately release Petitioner G.J. H.L., (A#241-816-249), from their custody and to return all of Petitioner's documents and possessions at the time of release.

3. Respondents be directed to file a notice certifying compliance with the above provisions within three (3) days from the date of any final order requiring release.

4. If the government seeks to re-detain Petitioner, it must provide no less than seven (7) days of notice to Petitioner and provide Petitioner with a bond hearing before an immigration judge at which the government must prove by clear and convincing evidence that Petitioner is a flight risk or danger to the community such that his re-detention is warranted.

5. The final order entered in this case not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final

order of removal and Petitioner receives notice of that final order of removal.

6. The Clerk of Court be directed to:

a. Serve a copy of any release order on the California City Immigration Processing Center; and

b. Enter judgment in favor of Petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 22, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE